UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | |
|---|---|
| In re: <br>     ALYSSA S. PETERSON, <br>     *Debtor* | Case No.:  10-23429 (AMN) <br> Chapter 13 |
| ALYSSA S. PETERSON, <br>     *Plaintiff* <br> v. <br> WELLS FARGO BANK, N.A. <br>     *Defendant* | Adv. Pro. No. 15-2008 (AMN) <br><br> Re:  AP-ECF No. 41, 62 |

**APPEARANCES**

Alyssa Peterson  *Pro Se*
297 Grandview Terrace
Hartford, CT 06114

Tracy F. Allen, Esq.  Counsel for the Defendant,
William R. Dziedzic, Esq.  Wells Fargo Bank, N.A
Jeffrey M. Knickerbocker, Esq.
Bendett & McHugh, P.C.
270 Farmington Avenue, Suite 171
Farmington, CT 06032

## MEMORANDUM AND ORDER
## REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

Before the court are cross-motions for summary judgment filed by the plaintiff, Alyssa Peterson ("Ms. Peterson"), and the defendant, Wells Fargo Bank, N.A. ("Wells Fargo").  AP-ECF Nos. 62 and 41, respectively.[1]

---

[1] Documents filed in Ms. Peterson's chapter 13 case, bearing case number 10-23429, are identified as "ECF No. ___."  Documents filed in this adversary proceeding are identified as "AP-ECF No. ___."

## I. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).  The Bankruptcy Court derives its authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the District Court dated September 21, 1984.  This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).  This adversary proceeding arises under Ms. Peterson's Chapter 13 case pending in this District; therefore, venue is proper in this District pursuant to 28 U.S.C. § 1409.

## II. FACTUAL BACKGROUND

The court notes that both parties rely on the record of Ms. Peterson's main chapter 13 bankruptcy case, bearing number 10-23429 and that, in large part, the factual record is undisputed.[2]  From the record and the parties' submissions, the court finds the following facts.

On October 5, 2010, Ms. Peterson, proceeding *pro se*, filed a voluntary chapter 13 bankruptcy petition (the "Petition Date").  ECF No. 1.  Wells Fargo filed a proof of claim for $136,273.73 based upon a note and mortgage on property known as 213 Atlantic Avenue, Kure Beach, North Carolina ("Wells Fargo POC").  POC 4-1.  The Wells Fargo POC identified that on the Petition Date the arrearage owed on the mortgage was $60,969.39.  POC 4-1, p. 1.  Five months after the Petition Date, Ms. Peterson retained Attorney Anthony Novak as counsel.  ECF No. 56.  Through the assistance of counsel, Ms. Peterson objected to the Wells Fargo POC asserting that Wells Fargo wrongly

---

[2] Wells Fargo represented in its memorandum of law in support of its objection to Ms. Peterson's summary judgment motion that "the parties agree that there is no genuine issue of material fact, but [Wells Fargo] asserts that the court should enter judgment should enter in [Wells Fargo's] favor."  AP-ECF No. 65-1.

2

calculated the amount of the arrearage, wrongly charged Ms. Peterson for home insurance, and wrongly revoked her right to reinstate the mortgage. ECF Nos. 85, 170. In an interim ruling regarding the objection to the Wells Fargo POC, the court (Dabrowski, J.) determined that,

> the doctrine of collateral estoppel precludes relitigation of the following issues which were actually and necessarily determined by the [North Carolina] Superior Court in its Order of December 7, 2009:
> (1) Wells Fargo was the holder of a valid debt of the Debtor;
> (2) such debt was in default;
> (3) the mortgage instrument includes a provision authorizing the power of sale procedure; and
> (4) the Debtor received notice of the foreclosure.
> The Court further concludes that it has the jurisdiction to hear and determine the amount of Wells Fargo's claim against the Debtor and is not precluded from so doing under the Rooker-Feldman, collateral estoppel, or *res judicata* doctrines, in accordance with which:
> IT IS HEREBY ORDERED that an evidentiary hearing on the Debtor's Objection to determine the monetary amount of Wells Fargo's Claim shall be held before this Court … .
> ECF No. 223, P. 10.

Prior to an evidentiary hearing regarding the Wells Fargo POC, Ms. Peterson filed her Fifth Amended Chapter 13 Plan ("5th Amended Plan"). ECF No. 245. The 5th Amended Plan provided the following treatment for secured claims:

> SECURED CLAIMS: Pro rata after the above payments, payments to secured creditors whose claims are duly proved and allowed, together with interest, if applicable, as hereinafter set forth:
>
> > Mortgage arrearage plus county taxes of $60,969.39 (disputed and subject to being reduced upon court determination or agreement between the parties) to Wells Fargo N.A. [sic] for Kure Beach, NC property+ 0% interest (Claim #4)
> >
> > Property Taxes of $26,638.94 for 83-87 Harwinton Avenue to the City of Torrington, CT+ 18% statutory interest (Claim #2) ["Torrington Tax Claim"]
> >
> > Property Taxes of $6,273.94 (disputed and subject to being reduced upon court determination or agreement between the parties) for condo

3

>unit #B-3, 230 Farmington Avenue, Hartford, CT to 224-240 Church Street LLC + 18% statutory interest (Claim #12)
>
>Property Taxes of $9,399.87 (disputed and subject to being reduced upon court determination or agreement between the parties) for condo unit #G-7, 232 Farmington Avenue, Hartford, CT to Connecticut Tax Lien 1 LLC + 18% statutory interest (assigned portion of Claim #13)
>
>Arrearage of $14,288.00 for condo fees on Units B-3 and G- 7, 230-232 Farmington Avenue, Hartford to Laurelhart Condominium Association+ 5% interest on unsecured portion of claim (Claim #16)
>ECF No. 245, P. 5-6.

On March 8, 2013, the court confirmed Ms. Peterson's 5th Amended Plan. ECF No. 247. Slightly over a month later, on April 15, 2013, the Chapter 13 Standing Trustee disbursed $38,927.13 to Wells Fargo – as its *pro rata* distribution pursuant to the 5th Amended Plan. Wells Fargo's Local Rule 56(a)(1) Statement, AP-ECF No. 42, ¶ 23, *citing* Ms. Peterson's complaint; *see also* Ms. Peterson's Objection, AP-ECF No. 58, ¶ 44. Subsequent to the disbursement on July 8, 2013, Ms. Peterson received an email from the office of the Chapter 13 Standing Trustee detailing the distributions made to date.[3]  *See* Affidavit of Ms. Peterson, AP-ECF No. 64, ¶¶ 6, 7; *see also* exhibit 4 attached to Ms. Peterson's Memorandum for Summary Judgment, AP-ECF No. 63.

At the request of the parties and in light of the parties' settlement negotiations, the court delayed consideration of Ms. Peterson's objection to the Wells Fargo POC. ECF No. 249.  On September 10, 2013, Wells Fargo filed an amended proof of claim for $125,043.76 identifying an arrearage as of the petition date of $29,046.54. POC 4-3. Shortly thereafter, Ms. Peterson withdrew her objection to the Wells Fargo POC. ECF No. 295.

---

[3] Wells Fargo does not address this fact and the court considers the fact undisputed, see Rule 56(e)(2).

4

Ms. Peterson and Wells Fargo do not dispute that Wells Fargo returned $9,880.59 to the Chapter 13 Standing Trustee, representing the difference between the $38,927.13 disbursed in April 2013 and the amended arrearage amount of $29,046.54.  Wells Fargo Local Rule 56(a)(1) Statement, AP-ECF No. 42, ¶ 30; *see also*, Ms. Peterson's Objection, AP-ECF No. 58, ¶ 47.  Wells Fargo returned the $9,880.59 amount by check number 0001985003 dated December 24, 2013, that was deposited by the Chapter 13 Standing Trustee into the Trustee's account on or about January 21, 2014.  AP-ECF No. 58, P. 53.

### III.   **RELEVANT PROCEDURAL HISTORY**

On February 18, 2015, Ms. Peterson, proceeding *pro se*, commenced this adversary proceeding against the - now former - Chapter 13 Standing Trustee - Molly Whiton; American Tax Funding; Torrington Tax Collector; and Wells Fargo Bank, N.A. ("Adversary Complaint").[4]  AP-ECF No. 1.  The only count relevant to the pending motions is the third count.[5]

In considering the Adversary Complaint and the third count, the court notes that, "[i]t is well-established that *pro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for pro se litigants); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005)("pro se litigants . . . cannot be expected to know all of the legal

---

[4] Wells Fargo is the only remaining defendant as the court granted Ms. Peterson's request to dismiss the action as to American Tax Funding and the Torrington Tax Collector and approved a settlement between Ms. Peterson and the former Chapter 13 Standing Trustee.  *See*, AP-ECF No. 85, 90, 91.
[5] The court denied count one seeking a preliminary injunction, AP-ECF No. 12, and Wells Fargo is not named in count two of the Adversary Complaint.  AP-ECF No. 41, p. 6 and AP-ECF No. 58, p. 1.

5

theories on which they might ultimately recover.  It is enough that they allege that they were injured, and that their allegations can conceivably give rise to a viable claim.").

In her Adversary Complaint, Ms. Peterson alleges the following against Wells Fargo:

| *Adversary Complaint* | *Allegation* |
|---|---|
| ¶ 15 | At varying points during the bankruptcy proceedings, Defendant Trustee, Defendant Tax Collector, Defendant ATF, Defendant Wells Fargo, and creditors 224-240 Church Street, LLC and Connecticut Tax Liens I, LLC, objected to confirmation of Debtor's plan. |
| ¶ 18 | Despite notice of [the existence of assets to pay creditors claims], interest continued to grow unnecessarily on the municipal tax debts of the Debtor, through the end of 2011 and throughout 2012 and into 2013, due to Defendants' and creditors' meritless objections to a confirmation of plan. |
| ¶ 44 | Defendant Wells Fargo, whose Proof of Claim #4 was also listed as "disputed" in the approved plan and who was engaged in serious litigation of said claim, was sent Defendant Trustee check #440293 in error for $38,927.13 on April 15, 2013. |
| ¶ 45 | Prior to Debtor's request to the Defendant Trustee's office, Defendant Wells Fargo never notified Defendant Trustee or the court throughout litigation that they had received disputed claim funds in error and did not return said funds. |
| ¶ 46 | Following a limited ruling by the Court (Dabrowski, J.) in favor of the Debtor, (ECF Doc. 223), Defendant Wells Fargo offered a settlement to the claim dispute and filed an Amended Proof of Claim #4, which clearly did not reference that it had received or was keeping, claim funds already sent in error. |
| ¶ 47 | Defendant Wells Fargo wrongly held out estate funds until settlement was reached in the amount of $38,927.13 and only returned $9,880.59 to the Defendant Trustee, although Claim #4 was not a municipal tax claim having priority due to 18% interest as identified in the court Order (ECF Doc 247). |
| ¶ 48 | Plaintiff Debtor would never have agreed to Amended Proof of Claim #4 if she understood Defendant Wells Fargo would keep the wrongly paid claim money and not return it so that priority municipal tax claims accruing 18% interest could be paid in accordance with the Plan and accompanying Plan Order, and by verbal agreement in court on March 7, 2013. |

6

| ¶ 53 | Defendant Wells Fargo further engaged in other collection tactics and false behavior against the Plaintiff Debtor that was previously identified during evidentiary hearing of Claim #4. |
|---|---|
| ¶ 54 | Such additional tactics and false behavior included sending other collection agents … to placard Debtor's property with multiple embarrassing paper notices which threatened to gain entry and change locks; [Wells Fargo] gave knowingly false information to both [Ms. Peterson] and her insurer about photographs taken and electricity being shut off to the property; and, [Wells Fargo] directly caused the Debtor's insurer to send notice of impending cancellation. |
| ¶ 55 | Despite Defendant Wells Fargo's refusal to return $29,000 of claim money sent in error; despite proof of Defendant's false conduct revealed during claim litigation and hearing; and, despite additional illegal collection conduct, Defendant Wells Fargo also declined an offer from the Defendant to settle out of the case completely. |
| ¶ 73 | The Plaintiff Debtor is seeking an evidentiary hearing so the court can hear facts and determine the amount of interest and damages incurred by the Plaintiff Debtor's estate due to error or negligence on the part of all the named Defendants. |
| ¶ 74 | The Plaintiff Debtor is seeking the court's determination of how much taxes are owed in Torrington, CT based on the amount of interest and damages wrongly incurred by the estate, as well as determine how much the Defendant Tax Collector has been overpaid and what should be credited to post-petition tax payments. |

Applying a broad interpretation, as this court must, the court construes Ms. Peterson's allegations as asserting the following claims against Wells Fargo:

- that Wells Fargo wrongfully objected to confirmation of Ms. Peterson's proposed chapter 13 plans and, but for Wells Fargo's objection, Ms. Peterson's plan would have been confirmed earlier and she would not be liable for additional interest – at 18% per annum - that accrued on the Torrington Tax Claim (*see* ¶¶ 15, 18);

- that Wells Fargo wrongfully received funds disbursed by the Chapter 13 Standing Trustee and returned only $9,880.59 after settlement of the Wells POC, and but for Wells Fargo's receipt of funds and delay in returning the funds after settlement, Ms. Peterson would not be liable for additional interest – at 18% per annum - that accrued on the Torrington Tax Claim (*see* ¶¶ 44, 45, 46, 47, 55, 74);

7

- that Wells Fargo failed to notify Ms. Peterson that it had received funds from the Chapter 13 Standing Trustee and its failure caused Ms. Peterson to enter into a settlement of the dispute regarding the Wells Fargo POC that she otherwise would not have agreed to (*see,* ¶¶ 45, 46, 48);

- that Wells Fargo engaged in false and deceptive collection activities that Ms. Peterson had previously identified in connection with her objection to the Wells Fargo POC (*see,* ¶¶ 53 and 54).

In light of Ms. Peterson's *pro se* status and despite the third count being entitled "Third Claim for Relief (Declaratory Judgment)", the court interprets the requested relief to include monetary damages stemming from the conduct alleged.

In its answer, Wells Fargo admitted that it received - in April 2013 - funds from the Chapter 13 Standing Trustee, but denied that the receipt of the funds was in error. AP-ECF No. 24. As to all other allegations of the complaint, Wells Fargo denied them or stated it was without sufficient knowledge and belief to form a response, and left Ms. Peterson to her proof. AP-ECF No. 24.

On January 28, 2016, Wells Fargo moved for summary judgment ("Wells Fargo's Motion") as to count three arguing 1) that any allegations of wrongdoing that may have occurred prior to the settlement were resolved by the settlement and withdrawal of Ms. Peterson's objection to the Wells Fargo POC; 2) that the disbursement by the Chapter 13 Standing Trustee to Wells Fargo was proper; and 3) that the delay in the confirmation of Ms. Peterson's chapter 13 plan was not the result of any wrongful action by Wells Fargo. AP-ECF No. 41. Ms. Peterson objected to Wells Fargo's Motion reiterating the allegations stated in her Adversary Complaint. AP-ECF No. 58.

Thereafter, Ms. Peterson moved for summary judgment against Wells Fargo seeking judgment on all of the allegations in her complaint ("Ms. Peterson's Motion"). AP-

8

ECF Nos. 62, 63, 64. Ms. Peterson, also asserted, for the first time, that Wells Fargo's post-petition conduct – as set forth in paragraph 54 of her Adversary Complaint - constituted either a violation of the automatic stay, or a violation of the Fair Debt Collection Practices Act ("FDCPA"), based on the following:

- attempts to wrongly collect additional funds from [Ms. Peterson],
- the concealment of receipt of disputed claim funds,
- the refusal to return the full amount of claim funds when questioned,
- the delay in returning any portion,
- the failure to contact or notify the Trustee,
- the interest growing on the priority Torrington Tax debt.

AP-ECF No. 63, p. 10-11.

Additionally, Ms. Peterson's Motion described an incident that took place at some point in December 2013 where alleged representatives of Wells Fargo reported to her insurance company that Ms. Peterson's property in North Carolina was abandoned. AP-ECF No. 63, P. 12-14; *See* Affidavit of Ms. Peterson, AP-ECF No. 64, ¶ 14-18. Wells Fargo objected to Ms. Peterson's Motion, asserting that any delay in payment of the Torrington Tax claim was the result of Ms. Peterson's falling behind in plan payments and that any alleged violation of the FDCPA was barred by the one year statute of limitations pursuant to 15 U.S.C. § 1692k(d). AP-ECF No. 65.

The court heard oral argument on the cross motions for summary judgment on June 15, 2017. AP-ECF No. 105.

### IV. **SUMMARY JUDGMENT STANDARD**

The principles governing the court's review of a motion for summary judgment are well established. Summary judgment may be granted only if, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a), made applicable to adversary proceeding by

9

Fed.R.Bankr.P. 7056.  The court's role at the summary judgment stage is to determine if there are material facts in dispute warranting a trial.  In the absence of disputed material facts, the court must determine if a party is entitled to judgment as a matter of law.  Of course, the court must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a factfinder to decide the case in favor of the opposing party.  In essence, a "judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014)(internal citations and quotations omitted).

On cross-motions for summary judgment, "each cross-movant is required to present sufficient evidence to allow the court to enter judgment in its favor."  *Gelfman v. Capitol Indem. Corp.*, 39 F. Supp. 3d 255, 265 (E.D.N.Y. 2014), *citing Barhold v. Rodriguez*, 863 F.2d 233 (2d Cir.1988).  The standard is the same for each summary judgment motion as it is for any individual motion for summary judgment.  *Rosales v. Vieira Sardinha Realty, LLC*, No. 13-CV-06980 (TPG), 2017 WL 4157365, at *3 (S.D.N.Y. 2017)(internal citation omitted).

**V.    DISCUSSION**

Here, the material facts are – in large part[6] - undisputed as the parties agree that the material facts are primarily set forth in the record of Ms. Peterson's chapter 13 bankruptcy case.  The crux of the dispute centers on whether these facts result in any liability on the part of Wells Fargo.  As noted above, the court has interpreted Ms.

---

[6] The court notes that the material facts are undisputed with one exception - the claim regarding a violation of the automatic stay and/or FDCPA.  The court addresses these claims in Section E below.

10

Peterson's claims broadly, identifying four separate claims and the court will address each claim below.

A. **Claim #1: That Wells Fargo wrongfully objected to confirmation of Ms. Peterson's proposed chapter 13 plans and, but for Wells Fargo's objection, Ms. Peterson's plan would have been confirmed earlier and she would not be liable for additional interest – at 18% - accruing on the Torrington Tax Claim.**

Ms. Peterson claims that Wells Fargo filed meritless objections to confirmation of her chapter 13 plan, which delayed payment on the Torrington Tax Claim resulting in additional interest accruing on that claim. However, the record reflects that Wells Fargo filed a single objection to confirmation throughout Ms. Peterson's plan confirmation process.[7] ECF No. 76, later modified and refiled as ECF No. 95. That single objection questioned the feasibility of Ms. Peterson's first amended chapter 13 plan that she proposed to fund, in part, through the - hopefully successful - collection on judgments previously obtained in the Connecticut Superior Court.[8] To be confirmed, a chapter 13 plan must be feasible. *See* 11 U.S.C. § 1325(a)(6); *In re Sadlowski*, Docket No. 3:14-cv-01088 (MPS), 2015 U.S. Dist. LEXIS 38898, at *4 (D.Conn. 2015) (*citing In re Capodanno*, 94 B.R. 62, 64 (Bankr.E.D.Pa. 1988) ("[The] feasibility of a Plan is an absolute prerequisite to confirmation.")).

The court has considered Ms. Peterson's argument that the Wells Fargo's objection was meritless, but, after review, the court disagrees. The court notes that the

---

[7] The court notes that the record reflects that Ms. Peterson amended her chapter 13 plan five times before the court confirmed her 5th Amended Plan. *See*, ECF Nos. 104, 238, 240, 245. The record also indicates that other creditors filed, collectively, ten separate objections to Ms. Peterson's proposed plans. *See*, ECF Nos. 49, 100, 105, 137, 141, 220, 239, 241, 243, 246.

[8] Specifically, Ms. Peterson proposed to fund her chapter 13 plan through the collection of a judgment of $195,482.96, plus post-judgment interest, obtained against Hannah Woldeyohannes in the Connecticut Superior Court case bearing docket number HHD-CV-04-0834966-S and the collection of a judgment obtained against Richard Hudson in the Superior Court Small Claims case bearing docket number 7065.

11

concern over the speculative nature of the Ms. Peterson's plan was voiced not only by Wells Fargo, but also by the former Chapter 13 Standing Trustee during the confirmation hearing. *See*, AP-ECF No. 70, Transcript of Hearing held on March 7, 2013 before Judge Dabrowski[9], P. 16, Lines 17-22 ("I know this plan is speculative. However I personally think when you have a lot of speculative income, it is to the creditor's advantage to have it under the auspices of the bankruptcy court and under a chapter 13 plan"). But more importantly, Judge Dabrowski considered Wells Fargo's feasibility objection during the confirmation hearing and did not indicate that the speculative nature of the plan was a meritless argument, but rather overruled the objection on the particular circumstances of this case:

> [W]ell, this is [a] plan that is, if not speculative, it is clearly somewhat speculative and speculative plan are not always confirmed. In fact, they're often not confirmed. However, this is a – well, it is a one of a kind. This is a very unusual situation. I am familiar with the various appendages of this case and the Woldeyohannes case which it's related to, so to speak, although I would be frank to say I doubt that I could repeat all those details off the top of my head. But in any event, I have more than the usual familiarity with this particular case and what's going on here in terms of the plan. The bottom line is to the extent that the objections that we've just addressed have not been incorporated in to 241 and 244, to the extent they are unresolved, they're overruled.
> AP-ECF No. 70, Transcript of Hearing held on March 7, 2013 before Judge Dabrowski, P. 17, Lines 13-25.

That Ms. Peterson disagreed with the basis for Wells Fargo's objection does equate to its objection lacking merit. In short, the court cannot conclude that Wells Fargo filed a meritless objection or caused unnecessary delay in the confirmation of Ms. Peterson's chapter 13 plan. Accordingly, the court grants summary judgment in favor of

---

[9] The court takes judicial notice of the transcript of proceedings before the Honorable Albert S. Dabrowski (retired), filed on the docket of this adversary proceeding by Ms. Peterson at AP-ECF No. 70.

Wells Fargo as to any claim arising from Wells Fargo's conduct in objecting to confirmation of Ms. Peterson's chapter 13 plan.

> **B.    Claim #2: That Wells Fargo wrongfully received funds disbursed by the Chapter 13 Standing Trustee and returned only $9,880.59 after settlement of the Wells Fargo POC, and but for Wells Fargo's receipt of funds and delay in returning the funds after settlement, Ms. Peterson would not be liable for additional interest – at 18% - accruing on the Torrington Tax Claim.**

Ms. Peterson's primary complaint with Wells Fargo is that the Chapter 13 Standing Trustee disbursed funds to Wells Fargo at a time when its claim was disputed and that Wells Fargo retained those funds. First, Wells Fargo cannot be held liable for any alleged error by the Chapter 13 Standing Trustee.[10] Ms. Peterson's plan provided for *pro rata* payment on Wells Fargo's secured claim for a mortgage arrearage of $60,969.39 subject to being reduced upon court determination or agreement of the parties.[11] ECF No. 245. At the time Wells Fargo received the $38,927.13 in April of 2013, neither event – a reduction by the court or an agreement of the parties – had occurred. The court is not persuaded by Ms. Peterson's assertion that Wells Fargo, as a creditor named in the 5th Amended Plan with a claim of $60,969.39, had a duty to return the funds. Even if the Chapter 13 Standing Trustee's disbursement was an error that violated the terms of the confirmed plan, the fault and any damages arising from such an error do not fall on the creditor.

Ms. Peterson argues that her 5th Amended Plan provided for "payments to secured creditors whose claims are duly proved and allowed" and that at the time of Wells Fargo's

---

[10] Ms. Peterson also named the former Chapter 13 Standing Trustee, in this adversary proceeding and after mediation reached a settlement of all her claims against the former Chapter 13 Standing Trustee, in which Ms. Peterson received a payment of $9,979.00. *See* AP-ECF No. 90.

[11] The court notes the 5th Amended Plan did not treat the principal amount of the mortgage.

13

receipt of funds from the Chapter 13 Standing Trustee, Wells Fargo's claim had not been allowed.[12]  Ms. Peterson concludes that Wells Fargo should have known its claim was not yet allowed and should have returned the funds because it was not entitled to payment under her 5th Amended Plan.  Ms. Peterson asserts Wells Fargo's retention of the funds caused her harm because that money could have been used to pay the City of Torrington's tax claim that was accruing interest at a rate of 18% per annum.

The court disagrees.  Again, the court declines to impose a burden on a creditor to investigate whether its receipt of funds – and the timing of its receipt of funds - from a Chapter 13 Standing Trustee is proper.  Further, the court disagrees that a creditor has the burden of knowing what disbursements have been made to other creditors or taking steps to ensure other creditors are paid properly under a confirmed plan.  If an error is made in the disbursement of funds to creditors, the burden falls on the Chapter 13 Standing Trustee, not on the creditor, as the Chapter 13 Standing Trustee is the party with the responsibility for making payments to creditors pursuant to the plan.  *See*, 11 U.S.C. § 1326(c)(Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan).

Neither party disputes that after a settlement was reached in September of 2013, Wells Fargo returned $9,880.59, representing the difference between what Wells Fargo received, and the agreed upon arrearage amount.  Ms. Peterson argues that Wells Fargo should have returned all of the funds received – not just the difference.  The court disagrees. Wells Fargo was a creditor with a secured claim entitled to payment under the

---

[12] At the time of confirmation of Ms. Peterson's 5th Amended Plan and of disbursement by the Chapter 13 Standing Trustee to Wells Fargo, the resolution of Ms. Peterson's objection to the Wells Fargo POC was still pending before the court.  *See*, ECF No. 247, 250, 264.

14

5th Amended Plan – subject to reduction by the court or agreement by the parties. This condition regarding Wells Fargo's payment – that it was subject to reduction by agreement of the parties – occurred when the parties reached a settlement of the dispute regarding the Wells Fargo POC. ECF No. 295. Thereafter, Wells Fargo returned the amount in excess of the agreed upon amended arrearage and, the court concludes that Wells Fargo was entitled to retain the balance – as its *pro rata* payment on that amended and allowed claim.

But the court agrees with Ms. Peterson that Wells Fargo's delay in returning the excess funds of $9,880.59 after the settlement resulted in harm to Ms. Peterson's chapter 13 estate. The chronology is undisputed that, on September 12, 2013, Ms. Peterson withdrew her objection to the Wells Fargo POC, but Wells Fargo did not return the funds until at least December 24, 3013 – a period of over 3 months, or approximately 103 days. The court finds this delay inexcusably long. In the absence of any term in the settlement or specific agreement of the parties, and under the circumstances here, the court concludes that thirty (30) days would have been a reasonable period in which to return the excess funds. If Wells Fargo had timely returned the excess funds, the Chapter 13 Standing Trustee could have disbursed those funds to pay the Torrington Tax Claim. Based upon the court's use of a 30-day period after settlement to be a reasonable time for compliance, the excess funds should have been returned no later than October 12, 2013. The funds were not returned for another 73 days, until December 24, 2013. Applying 18% per annum interest – the interest rate accruing as a result of non-payment of the Torrington Tax Claim – to $9,880.59, for 73 days, the court concludes the sum of $355.70 was incurred by Ms. Peterson's estate as a result of Wells Fargo's unreasonable

15

delay.[13] Therefore, the court concludes that summary judgement should enter in favor of Ms. Peterson, in part, as it relates to the unreasonable failure of Wells Fargo to timely return the excess funds to the Chapter 13 Standing Trustee.

### C. Claim #3: That Wells Fargo failed to notify Ms. Peterson that it had received funds from the Chapter 13 Standing Trustee and its failure caused Ms. Peterson to enter into a settlement of the Wells Fargo POC to which she otherwise would not have agreed.

Ms. Peterson claims that Wells Fargo failed to notify her that it had received funds from the Chapter 13 Standing Trustee in April of 2013. Ms. Peterson asserts that if Wells Fargo had notified her of its receipt of the funds, she would not have entered into the settlement regarding the Wells POC. Despite this claim, Ms. Peterson has not provided the court with any basis, statutory or otherwise, for the existence of the alleged duty to notify. The court concludes that no duty existed requiring Wells Fargo to notify Ms. Peterson that it received funds from the Chapter 13 Standing Trustee. Since the court concludes there was no duty owed to Ms. Peterson summary judgment is granted, in this part, in favor of Wells Fargo.

Even assuming *arguendo* that Wells Fargo had a duty, the court notes that the undisputed facts fail to support the harm complained of – that Ms. Peterson settled a claim she might otherwise have not settled. Ms. Peterson admits that on July 8, 2013 she received an email from the office of the Chapter 13 Standing Trustee listing the distributions made – including the distribution to Wells Fargo. AP-ECF No. 1, P. 7, ¶ 30; *see also*, AP-ECF No. 58, P. 4, ¶ 30. Yet, subsequent to the receipt of this email, Ms. Peterson withdrew her objection to the Wells Fargo POC. AP-ECF No. 295. Even if Wells Fargo had a duty to notify Ms. Peterson – which the court concludes it did not - the

---

[13] ($9,880.59 x 0.18 x .2 = $355.70), (73 days = .2 years based upon 365 day year).

facts suggest that Ms. Peterson knew well in advance of the settlement that the Chapter 13 Standing Trustee disbursed funds to Wells Fargo. To withstand a motion for summary judgment, Ms. Peterson had the burden to present affidavits or evidence demonstrating that a genuine issue of material fact exists. Here, Ms. Peterson admits in her affidavit knowledge of the distribution made to Wells Fargo. Since no rational trier of fact could conclude that Wells Fargo caused the harm complained of, summary judgment is properly granted, in this part, in favor of Wells Fargo.

> **D.    Claim #4: That Wells Fargo engaged in false and deceptive collection activities that Ms. Peterson had previously identified in connection with her objection to the Wells Fargo POC.**

Ms. Peterson's complaint broadly alleges that Wells Fargo engaged in false or deceptive behavior that Ms. Peterson previously identified in connection with her objection to the Wells Fargo POC. AP-ECF No. 1, ¶ 53. Fatal to Ms. Peterson's claim in this adversary proceeding is her acknowledgement that she previously raised these arguments in her objection to the Wells Fargo POC. In her objection to the Wells Fargo POC, Ms. Peterson argued, among other things, that Wells Fargo wrongly calculated the amount of the arrearage, wrongly charged her home insurance, and wrongly revoked her right to reinstate. ECF No. 85, ¶¶ 1, 7, 8; *see also* ECF No. 170, ¶¶ 1, 7, 8. Ms. Peterson also objected to the Wells Fargo POC alleging that Wells Fargo engaged in fraud by submitting false affidavits and exhibits in connection with the foreclosure of Ms. Peterson's North Carolina property. ECF No. 194, P. 12-28. On September 12, 2013, Ms. Peterson withdrew her objection to the Wells Fargo POC without any reservations or conditions.[14] ECF No. 295. Based upon this record, the court concludes that the

---

[14] During a hearing held on October 4, 2017, regarding a motion for relief from stay filed by Wells Fargo in Ms. Peterson's main chapter 13 case, Ms. Peterson alleged that there were supposed to be more

17

settlement of the Wells Fargo POC by withdrawal of the objection was simply a complete settlement of all the objections raised by Ms. Peterson, barring future reassertion of those objections. *See, Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)("Issue preclusion … bars 'successive litigation of an issue of fact or law actually litigated and resolved …" and "'preclud[es] parties from contesting matters that they have had a full and fair opportunity to litigate.'")(*quoting New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001); *Montana v. United States*, 440 U.S. 147, 153-154 (1979)).  Accordingly, the court concludes any claims asserted in this adversary proceeding that were previously identified in connection with Ms. Peterson's objection to the Wells Fargo POC were settled.  As to these pre-settlement claims, the court grants summary judgment to Wells Fargo.

### E.    Ms. Peterson's Automatic Stay & FDCPA Claims

In her memorandum in support of summary judgment, Ms. Peterson – for the first time – claims that Wells Fargo's conduct constituted a violation of either the automatic stay pursuant to 11 U.S.C. § 362 and/or the FDCPA, 15 U.S.C. § 1692 *et seq*.  ECF No. 63, p. 11.  Nowhere in Ms. Peterson's Adversary Proceeding Complaint, does she use the words "automatic stay" or "Fair Debt Collection Practices Act" or "FDCPA" in connection with her description of Wells Fargo's conduct.  However, the court recognizes that Ms. Peterson is *pro se* and the court must construe her pleadings liberally and interpret them to raise the strongest arguments.  In paragraph 54, Ms. Peterson alleges that Wells Fargo engaged in "false behavior" that included placarding Ms. Peterson's property with embarrassing paper notices, threatening to change the locks, providing false information regarding the status of the property, and causing Ms. Peterson's

---

documents filed in support of settlement in 2013.  The record is undisputed that nothing was filed other than the amended POC and Ms. Peterson's withdrawal.

18

insurance company to send notice of impending cancellation. ECF No. 1, ¶ 54. Applying a broad interpretation, as it must, the court construes paragraph 54 – without deciding whether the allegations are sufficient to survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) -- as containing facts that could constitute a violation of the FDCPA or the automatic stay. This interpretation leaves the court in a somewhat abnormal procedural posture because Wells Fargo has not had the opportunity to plead to such claims. Because while the court is charged with interpreting a *pro se* plaintiff's complaint broadly, Wells Fargo, as a defendant, is not. A completely plausible interpretation of paragraph 54, read in connection with paragraph 53, is that the factual allegations involved conduct that Ms. Peterson previously identified in her objection to the Wells Fargo POC and that occurred before her withdrawal of her objection to the Wells Fargo POC. Wells Fargo responded to that interpretation of the allegations by moving for summary judgment based upon the settlement, which as noted above, the court grants. Wells Fargo has not responded to the court's interpretation of paragraph 54.[15] Given the court's reading of paragraph 54 of Ms. Peterson's Adversary Complaint and the court's recognition that Wells Fargo may have interpreted the complaint differently, the court cannot grant Ms. Peterson's motion for summary judgment on this basis at this time. The court, simultaneously with the issuance of this order, will enter a scheduling order providing Wells Fargo with a deadline by which it may – but is not required – to respond

---

[15] While Wells Fargo opposed Ms. Peterson's motion for summary judgment and indicated that the statute of limitations may bar any claim under the FDCPA, it failed to address in its objection a claim for a violation of the automatic stay. But that failure is not dispositive here because the court acknowledges that Ms. Peterson's Adversary Proceeding Complaint is not a model of clarity and Wells Fargo may not have been aware that a claim for a violation of the automatic stay or FDCPA existed. The court will not preclude Wells Fargo from filing any response allowed by the Federal Rules of Civil Procedure to such claims.

to the FDCPA and/or automatic stay claims provided in paragraph 54 of the Adversary Proceeding Complaint.

## VI. **CONCLUSION**

For the reasons stated herein, it is hereby

**ORDERED**, that Ms. Peterson's motion for summary judgment, AP-ECF No. 62, is GRANTED, in part, as to count three and Ms. Peterson is awarded the sum of $355.70 as damages resulting from Wells Fargo's unreasonable delay in returning excess funds after settlement of Ms. Peterson's objection to the Wells Fargo POC; and it is further

**ORDERED**, that Wells Fargo's motion for summary judgment, AP-ECF No. 41, is GRANTED, in part, as to any claims by Ms. Peterson relating to 1) Wells Fargo's objection to confirmation of Ms. Peterson's chapter 13 plan, 2) Wells Fargo's retention of funds disbursed by the Chapter 13 Standing Trustee – except for the excess funds after settlement, 3) Wells Fargo's failure to notify Ms. Peterson regarding its receipt of funds from the Chapter 13 Standing Trustee, and 4) allegedly false or deceptive conduct that Ms. Peterson had previously identified in connection with her objection to the Wells Fargo POC and that was resolved by the withdrawal of her objection; and it is further

**ORDERED**, that a scheduling order shall enter to provide Wells Fargo the opportunity to respond to the claims outlined in section E above.

Dated on March 2, 2018, at New Haven, Connecticut.



*Ann M. Nevins*
United States Bankruptcy Judge
District of Connecticut